# NEW YORK SUPERIOR COURT.

## JOHN McDONALD agt. SAMUEL LORD and others.

A *contract* made for the employment of an *agent or clerk*, at a specified salary for *one year*, is an entire contract, and cannot be lawfully terminated *within the year* without justifiable cause.

An *agent* must faithfully serve his principal. He is bound to the exercise of all his skill, ability and industry in favor of his principal. As an agent *to sell*, it is his duty to get the highest fair price; and this duty is wholly incompatible with his *wish to buy* from his principal.

No agent or trustee can deal with the subject matter of his trust, except *for the benefit of his principal*. Any act by an agent in respect to the subject matter of the agency, injurious to the principal, may be avoided by the principal; and where an agent *to sell* becomes *the purchaser*, the court will presume that the transaction was injurious, and will not permit the agent to contradict the presumption.

Consequently, where a clerk was employed for one year at a stipulated salary as salesman in a carpet store, and during the year his principal ascertained that he had an interest in another carpet store, to which he sold carpets of his principal, although no unfairness or fraud was shown in making such sales :

*Held*, that the clerk virtually became the purchaser of the goods he sold, and his interest in the purchases was incompatible with the interests of his principal, and justified the principal in discharging him from his service.

*New York General Term, February*, 1864.

*Before* ROBERTSON, *Ch. J.*, MONCRIEF and MONELL, *Justices*.

THE plaintiff's assignor (John C. Boak) was employed by the defendants as manager of their carpet department in their store in this city, at a salary of $1,400, for one year from the 9th of January, 1860. On the 7th of July, 1860, Boak was discharged by the defendants from their service. Boak obtained other employment at a less salary, and the action was brought to recover the difference, for the unexpired part of the year, between the salary agreed to be paid by the defendants and that which Boak obtained elsewhere after his discharge. Boak testified that one of the defendants told him that he (Boak) had an interest in another carpet house in this city, and, if such was the case, he could no longer continue with them. He further testified : I did not tell Mr. Lord that I was inter-

ested in the firm of Beattys & Co.; I declined to tell Mr. Lord that I was; he asked me the question, and I declined to answer; I told him I considered it would make no difference to Lord & Taylor—that it was my business what investments I made with my funds; I became interested in the firm of Beattys & Co. on January 1st, 1859; the firm of Beattys & Boak commenced on the 13th of January, 1862, in the carpet business, at No. 8 Fourth avenue; they kept a store there in 1860; the way I was interested there was, I had money there; I had money invested in the house; any definite amount I could not state that I was to receive for my interest; it was dependent upon the profits; I told Mr. Lord I considered it exclusively my business; I think Mr. Lord told me they could not have any one in their establishment who was interested in any other house; he told me, if I was so interested elsewhere, I could no longer remain with Lord & Taylor; I sold Beattys carpets; I never received any instructions from the cashier to sell nothing further to Beattys in the month of May, 1860; I was told some time in the month of May or June, 1860, to sell no more goods to Benjamin Beattys on credit; that was the only instruction I ever received in the matter; I think Mr. Wilson showed me a letter written by John T. Lord in the Broadway house, instructing him to see that no more goods were sold to Benjamin Beattys on credit; Wilson had not, previous to that, directed me not to sell to Beattys; I had not refused to obey his directions; this note was not, to my knowledge, sent from John T. Lord, in consequence of my refusal.

Q. And didn't you, after getting this direction in May or June, continue to sell to Beattys? Didn't you direct the entry clerk to make entries to Beattys?

A. I have stated I sold goods to Beattys after seeing that letter of Lord's; it was after that that Lord came over and had this conversation, and asked me if I was so interested; Lord, when he discharged me, said he under-

stood I was interested in the concern of Beattys; I told
him that I did not hold myself responsible for current re-
ports; he wanted an explicit answer whether I was inter-
ested in it or not; I told him I considered it exclusively
my own business what use I made of money or any moneys
I might have; either before or after my using that ex-
pression, he said that I could not be interested elsewhere
and remain with the concern of Lord & Taylor; I had no
reply to make to that; I went with the house of Barnum,
Sutton & Co. on the 16th of July, 1860.

He further testified that he did not spend any of his
time at the store of Beattys & Boak, and that it did not
in any way interfere with the discharge of his duties with
the defendants; that he never purchased goods for Beat-
tys & Boak, and that he sold the goods of defendants to
them as he sold to any one else.

The defendants proved that the entry clerk was in-
structed by them not to enter sales to Beattys on credit,
and that Boak was so informed, and that Boak told the
entry clerk to enter any goods on time to a certain amount
and he would be responsible.

The justice dismissed the complaint, and from the judg-
ment of dismissal the plaintiff appealed.

JOHN HEWITT, *for appellant.*
W. R. STAFFORD, *for respondent.*

By the court, MONELL, J.   If the defendants dismissed
Boak from their service because of any disobedience of
their lawful orders, I think there was sufficient conflict in
the evidence on that subject to have required the case to
have gone to the jury.   Boak was directed not to sell any
more goods to Beattys & Boak on credit, and it was in
evidence, although contradicted by Boak, that after such
direction he continued to make sales to that firm.   This
disputed evidence would have been proper to go to the

jury, and it would have been error to have taken the question from them.

But there is another ground upon which it is proper to assume the learned justice put his decision.

The contract was an entire one, and the defendants could not lawfully terminate it within the year, without justifiable cause.

The evidence shows, that Boak, at the time of and during all of his employment by the defendants, to the time of his discharge, as the manager of their carpet department, was interested as a partner in the carpet house of Beattys & Boak, No. 8 Fourth avenue, and that he sold the goods of the defendants to the firm in which he was interested. The fact of this connection of their employee with the firm of Beattys & Boak did not come to the defendants' knowledge until shortly before his discharge, and the only ground assigned for the discharge was such connection and interest, and the sales by him of the defendants' property substantially to himself.

It is a well settled principle of morals as well as of law, that the agent must faithfully serve his principal. However unquestioned may be the honesty of the agent, or his impartiality between his own interests and those of his principal, he is bound to the exercise of all his skill, ability and industry in favor of his principal. As an agent to sell, it is his duty to get the highest fair price; and this duty is wholly incompatible with his wish to buy. In every trust this principle prevails. No agent or trustee can deal with the subject matter of his trust, except for the benefit of his principal. Executors and administrators are expressly forbidden by statute (2 R. S. 104, § 27) from purchasing the property of their testator or intestate; and the rule in equity is, that any act by an agent in respect to the subject matter of the agency, injurious to the principal, may be avoided by the principal, and where an agent to sell becomes the purchaser, the court will pre-

sume that the transaction was injurious, and will not permit the agent to contradict the presumption. (*Coles* agt. *Thecothick*, 9 *Ves.* 234, 247.) The policy of this rule is obvious. The confidence reposed in the agent must not be abused. His position of trust must not be employed to his own advantage, or to the injury of his principal. In short, while in the employment of his principal, his principal's interest must be his interest, and he may have no interest which, conflicting with those of his principal, can work injury to the latter.

Boak was the agent of the defendants to sell their property, and could not become the purchaser without violating the duty which the trust imposed upon him. He did virtually become the purchaser of the goods he sold, and his interest in the purchase was incompatible with the defendants' interests. It is not necessary to draw fine distinctions. There is no evidence in the case of positive unfairness or fraud on the part of Boak in making sales to Beattys & Co. There is no imputation upon his character, nor suspicion, that he made more favorable sales to the firm, in which he was interested, than to others. It is enough that the law presumes such sales to be injurious to the principal, and the plaintiff is not permitted to rebut the presumption. (*Dobson* agt. *Racey*, 3 *Sandf. Ch. R.* 60 ; *S. C.* 8 *N. Y. R.* 216.)

Upon principles so obvious and just, the facts of this case, in my judgment, afforded the defendants a full and complete justification for rescinding their contract with Boak, and discharging him from their service.

The learned justice was, therefore, correct in dismissing the complaint.

I am of opinion the judgment should be affirmed.